# Exhibit A

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|

| | JUDICIAL DISTRICT | | |
|---|---|---|---|
| OCEANA 27th | JUDICIAL CIRCUIT | **SUMMONS** | 19-13831 -NZ |
| | COUNTY PROBATE | | |

| Court address | Court telephone no. |
|---|---|
| 100 S State St # M-10, Hart, MI 49420 | (231) 873-4835 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| JOHN HEYKOOP, D/B/A EAGLE TOWING<br>10255 Old Highway 31<br>Montague, MI 49437 | v | OCEANA COUNTY, MICHIGAN, c/o Chairman of the Board of Commissioners, 100 S. State Street, Suite M-4, Hart, Michigan 49420; (231) 873-4835. OCEANA COUNTY SHERIFF CRAIG MAST, 216 Lincoln St., Hart, MI 49420, (231) 873-2121; MASON-OCEANA 911 BOARD, c/o Chairman of the Board of Commissioners, 100 S. State Street, Suite M-4, Hart, MI 49420; (231) 873-4835; MASON-OCEANA 911 BOARD DIRECTOR RAY HASIL, 9160 N. Oceana Dr., Pentwater, MI 49449; (231) 869-7911. |
| Plaintiff's attorney, bar no., address, and telephone no. | | |
| Michael J. Corcoran (P41254)<br>Corcoran, Austin, Smith PC<br>800 Cottageview Dr., Ste. 1080A<br>Traverse City, MI 49684<br>(231) 437-3199 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer   pending.

Summons section completed by court clerk.             **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party or **take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 10-16-2019 | 1-5-2020 | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   SUMMONS                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| **PROOF OF SERVICE** | **SUMMONS** |
|---|---|
| | Case No. |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                         Date

My commission expires: _____ Signature: _____
                          Date                      Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                        Attachments

_____ on _____
                     Day, date, time

_____ on behalf of _____
Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OCEANA

JOHN HEYKOOP D/B/A EAGLE TOWING

     Plaintiff

v

OCEANA COUNTY; OCEANA COUNTY
SHERIFF CRAIG MAST; MASON-OCEANA 911
BOARD; MASON-OCEANA 911
DIRECTOR RAY HASIL;
     Defendants.

Case No. 19-13831 - NZ
Hon.

ASSIGNED TO JUDGE
ROBERT D. SPRINGSTEAD

_____

Michael J. Corcoran (P41254)
Corcoran, Austin, Smith P.C.
Attorney for Plaintiff
800 Cottageview Dr., Ste. 1080A
Traverse City, MI 49684
(231) 437-3199

_____

## VERIFIED COMPLAINT AND JURY DEMAND

Comes now Plaintiff, by counsel, and presents this Verified Complaint, stating as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court because the matter in controversy exceeds $25,000, and this Court has concurrent jurisdiction over claims under 42 U.S.C. Section 1983.

2. Venue in this Court is proper because Plaintiff does business in Oceana County and all Defendants are Oceana County and agencies, agents, or employees thereof.

### PARTIES AND COMMON ALLEGATIONS

3. Plaintiff operates a towing business under the name of "Eagle Towing," and has been in the business of vehicular towing, storing, and recovery for more than 70 years.

4. Defendant Oceana County a political subdivision of the State of Michigan, that operates through a department called the Sheriff's Department (the "Sheriff's Department").

5. Defendant Craig Mast, is the Sheriff of Oceana County, Michigan.

6. Defendant Mason-Oceana 911 Board (the "911 Board") is an agency of Oceana County, Michigan, and Mason County, Michigan.

7. Defendant Ray Hasil is the Director of the Mason-Oceana 911 Board.

8. The Board maintains a No Preference Wrecker Shared Rotation List for the southern half of Oceana County, Michigan, which is a list of towing companies which the Mason-Oceana 911 Central Dispatch ("911 Dispatch") uses to call for wrecker services in situations where the driver or owner of a vehicle in need of such services does not or cannot express a preference for a particular towing company. Examples of this would include stranded or abandoned vehicles on public highways, accident situations, or vehicles illegally parked.

9. The Board picks the wrecker companies on a rotational basis. For example, when a call comes in for wrecker service, the 911 Dispatch contacts the company which is currently at the top of the list. If that company is unavailable or unable to take the call, the opportunity will go to the company that is next up on the list, and the company that was unable to take the assignment will go to the bottom of the list. The names on the list continue to cycle as calls come in and assignments are made.

2

10. Plaintiff has been on the 911 Board's rotational list since at least 2003, and until November 9, 2017 provided services in response to calls without incident.

11. The 911 Board manages this rotational list as a service to local law enforcement agencies. These are the agencies who are at the scene of the vehicles which need the wrecker service, and the agencies call the 911 Board Central Dispatch for the Central Dispatch to then contact a wrecker company. The Dispatch handles wrecker requests from the New Era Police Department, the Rothbury Police Department, the Hesperia Police Department, the Oceana County Sheriff's Office, and the Michigan State Police.

12. On July 20, 2017, the New Era Police Department, the Rothbury Police Department, the Hesperia Police Department, the Oceana County Sheriff's Office, and the Michigan State Police contacted the 911 Board and reaffirmed that they wanted Plaintiff and two other wrecker companies to be on the list. Per their request, these were the only three companies that would be on the list. The written request to the 911 Board is attached as **Exhibit 1**.

13. In June 2015, it come to Plaintiff's attention that fees collected for salvage title inspections were being mishandled by Robert Wilson, then the Chief of Police for the Village of Shelby in Oceana County. Wilson was a close friend of Defendant Mast.

14. Plaintiff reported information regarding Wilson's conduct to several authorities, including the Oceana Prosecuting Attorney. Wilson was convicted and sentenced in June 2017.

15. On or about November 9, 2017, Defendant Mast contacted Plaintiff by written letter and told him "I am removing Eagle Towing from the Oceana County Sheriff's Office

3

wrecker rotation through Mason-Oceana Central Dispatch effective immediately." A true and correct copy of the letter is attached in **Exhibit 2**.

16. The removal was allegedly based on one complaint from a vehicle owner over Plaintiff's customary charges, which had been properly submitted to and paid without objection by the owner's automobile insurance carrier.

17. The stated reason in Defendant Mast's letter for Plaintiff's removal is a pretext; the true reason is retaliation for Plaintiff's having reported law enforcement, and Sheriff Mast's personal friend, in particular, for improper handling of salvage title inspection fees.

18. The 911 Board is governed by a Policy known as the Mason-Oceana 911 Wrecker Policy, (the "911 Policy") which defines the types of services to be rendered by the wrecker companies that the 911 Dispatch contacts, the fees to be charged, and various policies and procedures of operation. A true and correct copy of this 911 Policy is attached as **Exhibit 3**.

19. The 911 Policy was enacted in March of 2017.

20. Section 8(5) of the 911 Policy specifies the procedures which the 911 Board should follow if a situation arises where someone wants a wrecker company removed from the rotational list. The Section specifies as follows:

   (5) When a complaint is received concerning the performance or rate change of a wrecker service or the service is not adhering to the requirements established by this policy, the complaint shall be immediately investigated.

   a. Unless extenuating circumstances exist, a wrecker service shall not have their contract cancelled or be removed from the no-preference wrecker call list without an investigation by the Board or their designee.

b. If it is found that the wrecker service failed to comply with the requirements of this policy, a written notice shall be sent describing the complaint and the action needed to maintain a position on the nopreference wrecker call list.

c. Wrecker services shall be notified in writing of any non-compliance with accepted standards of conduct in a timely manner, and advised that they have the right to an appeal in writing to the Board before administrative or disciplinary action can be taken. The written notice shall indicate that additional complaints could result in removal from the list.

21. On or about November 9, 2017, Defendant Mast contacted Defendant Hasil and informed him to not assign Plaintiff to any calls from Oceana County Sheriff's Department. A true and correct copy of the email communication between Defendants Mast and Hasil is attached as **Exhibit 4**.

22. Since November 9, 2017, Plaintiff has remained on the 911 Board's rotational list, but 911 Central Dispatch has not assigned to Plaintiff any calls for service coming to the Dispatch from the Oceana County Sheriff's Department.

23. If Plaintiff is at the top of the rotational list when a call for service comes in from the Sheriff's Department, Plaintiff is shifted to the bottom of the list, and the next company in line gets the business.

24. Plaintiff has incurred significant loss of revenue and business opportunity through this being repeatedly shifted to the bottom of the list.

25. The current 911 Policy lists certain criteria and qualifications which a wrecker company must meet to be on the non-preference rotational list, and Plaintiff meets these qualifications.

26. Upon information and belief, other companies on this rotational list do not meet these criteria, yet they continue to stay on the list receive calls for service from the Central Dispatch.

## COUNT I – FIRST AMENDMENT RETALIATION CLAIM (42 U.S.C. § 1983) AGAINST DEFENDANT MAST AND DEFENDANT OCEANA COUNTY SHERIFF'S DEPARTMENT

27. Plaintiff restates and incorporates all prior paragraphs.

28. Petitioning the government is protected activity under the First Amendment, and is a clearly established constitutional right under both the United States and Michigan Constitutions.

29. The Defendants removed Plaintiff from the calls from Oceana County in retaliation for Plaintiff's reporting law enforcement of suspected wrongful activities I processing salvage title inspection fees.

30. Plaintiff's action in reporting the wrongful conduct was protect activity.

31. Since Plaintiff's removal from the Oceana County calls, Defendant Mast and Defendant Oceana County Sheriff's Department have engaged in another retaliatory act of issuing a Media Release, dated November 27, 2017, containing defamatory, false, inaccurate, and misleading information and communication about Plaintiff. This Media Release was published at www.oceanacountypress.com on November 27, 2017. A true and correct copy of the Media Release and the publication by the Oceana County Press is attached hereto as **Exhibit 5**.

32. The Media Release refers to actions of "a local towing company" but does not mention Plaintiff by name, but Oceana County is a small and close-knit community,

6

and it was easy for anyone who reads the Oceana County Press to figure out that the article was referring to Plaintiff.

33. A reasonable person in Defendants' positions would have understood that the actions taken by Defendants described herein were retaliatory and violated Plaintiff's rights.

34. Defendants operated under color of law in retaliating against Plaintiff.

35. The actions taken against Plaintiff would deter a person of ordinary firmness from continuing to engage in conduct asserting their First Amendment rights.

36. Plaintiff's protected activity motivated Defendants' actions described herein.

37. The actions taken by Defendant Mast were authorized by Defendant Oceana County Sheriff's Department, under color of law, and Defendant Mast, a policy-making official, or person acting through delegated authority and under color of law, made the decision to retaliate against Plaintiff.

38. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue and injured reputation in the community.

39. Pursuant to 42 U.S C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendant Mast and Defendant Oceana County Sheriff's Department:

    a. Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

    b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions,

7

ordering Defendants to place Plaintiff back on the NonPreference call list

pertaining to calls for service from the Oceana County Sheriff's Department

and treat Plaintiff similarly to other towing companies with regard to service

calls;

c.  Awarding such other and further relief in law or equity as this Court may

deem just and proper.

## COUNT II – CLAIM FOR TORTIOUS INTERFERENCE
## WITH ECONOMIC RELATIONS

40. Plaintiff restates and incorporates herein all prior paragraphs.

41. Plaintiffs position on the NonPreference call list gave Plaintiff a valid business

expectancy of being called to tow and store stranded and disabled vehicles in the

southern part of Oceana County.

42. Defendants all knew of Plaintiff's business expectancy of providing this service.

43. Defendants' removal of Plaintiff from the NonPreference list pertaining to Oceana

County intentionally interfered with and caused a termination of the expectancy.

44. As a direct and proximate result of the above, Plaintiff has suffered damages and

irreparable harm, and continues to suffer damages on a daily basis, consisting of loss

of business and revenue and injured reputation in the community.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment

against Defendants:

a.  Awarding compensatory damages in excess of $100,000, prejudgment

interest, attorney's fees, and costs;

8

b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's business expectancy, and ordering Defendants to place Plaintiff back on the NonPreference call list pertaining to calls for service from the Oceana County Sheriff's Department;

c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

**COUNT III – CLAIM FOR PROCEDURAL DUE PROCESS VIOLATION UNDER 42 U.S.C. § 1983 and MICHIGAN CONSTITUTION, ARTICLE 1, §17**

45. Plaintiff incorporates all prior paragraphs.

46. 42 U.S.C. §1983 provides in pertinent part:

Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

47. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. §1983, provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

48. Article 1, §17 of the Michigan Constitution provides that "[n]o person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

9

49. The Defendants failed to follow the procedure in the 2017 911 Policy regarding removing a company from the rotational list, in that there was no investigation by the Board, there was no written notice given to Plaintiff describing the action needed to maintain a position on the no-preference wrecker call list, and Plaintiff was not given the right to appeal in writing to the Board before the removal action was taken.

50. Plaintiff's position on the call list gave it the right to this basic procedural process.

51. The actions taken by Defendant Mast were authorized by the Sheriff's Department, under color of law, and Defendant Mast, a policy-making official, or person acting through delegated authority and under color of law, made the decision to deny Plaintiff this basic due process.

52. The actions taken by Defendant Hasil were authorized by Defendant Mason-Oceana 911 Board, under color of law, and Defendant Hasil, a policy-making official, or person acting through delegated authority and under color of law, made the decision to deny Plaintiff due process.

53. Defendants' conduct in removing Plaintiff from the rotational list regarding Oceana County Sheriff Department calls has deprived Plaintiff of its due process rights under Federal and Michigan law.

54. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business revenue and injured reputation in the community.

55. Pursuant to 42 U.S.C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants:

    a.  Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

    b.  Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, and ordering Defendants to place Plaintiff back on the NonPreference call list pertaining to calls for service from the Oceana County Sheriff's Department;

    c.  Awarding such other and further relief in law or equity as this Court may deem just and proper.

## COUNT IV – VIOLATION OF EQUAL PROTECTION UNDER 42 U.S.C. § 1983 and MICHIGAN CONSTITUTION, ARTICLE 1, §2

56. Plaintiff restates and incorporates herein all prior paragraphs.

57. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. §1983, provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

58. Article 1, §2 of the Michigan Constitution provides that "[n]o person shall be denied the equal protection of the laws."

11

59. Defendant's conduct violates Plaintiff's right to equal protection of the laws; specifically, Plaintiff's right not to be treated arbitrarily or based upon animus by Defendants.

60. Defendants have intentionally treated Plaintiff differently from others similarly situated, and there is no rational basis for the difference in treatment.

61. Other towing companies and businesses within Oceana County have not been subjected to this discriminatory and unequal treatment.

62. The unequal treatment of Plaintiff was the result of intentional and purposeful discrimination against Plaintiff.

63. As a direct and proximate result of the above, Plaintiff has suffered damages and irreparable harm, and continues to suffer damages on a daily basis, consisting of loss of business and revenue and injured reputation in the community.

64. Pursuant to 42 U.S C. § 1988, Plaintiff requests an award of reasonable attorney's fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants:

    d.  Awarding compensatory damages in excess of $100,000, prejudgment interest, attorney's fees, and costs;

    e.  Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, and ordering Defendants to place Plaintiff back on the NonPreference call list pertaining to calls for service from the Oceana County Sheriff's Department;

f.   Awarding such other and further relief in law or equity as this Court may

deem just and proper.

## COUNT V – CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
## (42 U.S.C. § 1983)

65. Plaintiff incorporates all preceding paragraphs.

66. Defendants, acting under color of law, conspired to deprive Plaintiff of federally

protected rights, including the right to petition the government under the First

Amendment.

67. The conspiracy involved state action.

68. The object of the conspiracy was to silence, harm, punish, intimidate, and scare

Plaintiff, among other things.

69. Plaintiff was deprived of its civil rights in furtherance of the conspiracy.

70. As a direct and proximate result of the above, Plaintiff has suffered damages and

irreparable harm, and continues to suffer damages on a daily basis, consisting of loss

of business revenue and injured reputation in the community.

71. Pursuant to 42 U.S C. § 1988, Plaintiff requests an award of reasonable attorney's

fees as part of the costs associated with the enforcement of a provision of § 1983.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment

against Defendants:

a.   Awarding compensatory damages in excess of $100,000, prejudgment

interest, attorney's fees, and costs;

13

b. Entering an injunction, preliminarily and permanently enjoining Defendants from violating Plaintiff's rights under the U.S. and Michigan Constitutions, and ordering Defendants to place Plaintiff back on the NonPreference call list pertaining to calls for service from the Oceana County Sheriff's Department;

c. Awarding such other and further relief in law or equity as this Court may deem just and proper.

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.

## VERIFICATION

I, John Heykoop, owner of Eagle Towing, declare that the foregoing statements in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

John Heykoop
Date: _____

RESPECTFULLY SUBMITTED,

Dated: __10/16/2019__

Michael J. Corcoran (P41254)
Corcoran, Austin, Smith P.C.
Attorney for Plaintiff
800 Cottageview Dr., Ste. 1080A
Traverse City, MI 49684

14

# Exhibit 1

July 20, 2017

TO:         Raymond Hasil

FROM:       New Era PD, Rothbury PD, Hesperia PD, Oceana County Sheriff's
            Office, MSP Hart

RE:         No Preference Wrecker Shared Rotation List for Oceana County South

---

The following law enforcement agencies wish to share a common pool for no preference
wrecker requests in Oceana County South:

- New Era Police Department
- Rothbury Police Department
- Hesperia Police Department
- Oceana County Sheriff's Office
- Michigan State Police

We request that the shared no preference wrecker pool for Oceana County South consist of the
following wrecker services:

- Ace
- Eagle
- Neals

We request that Mason-Oceana 911 manage our shared no preference wrecker pool rotation to
determine who is the next on the list to be called for a no preference wrecker related need.

SIGNED:

_Roy Strait_     _7/20/2017_
Roy Strait, Chief     Date
New Era Police Department

_Tom Hasper_     _8/1/17_
Tom Hasper, Chief     Date
Rothbury Police Department

_Dale Gibbs_     _8/1/17_
Dale Gibbs, Chief     Date
Hesperia Police Department

_Craig Mast_     _7-20-17_
Craig Mast, Sheriff     Date
Oceana County Sheriff's Office

_Jeff White_     _7-30-17_
Jeff White, F/Lt.     Date
Michigan State Police - Hart Post

_Terry Tenbrink_     _7-20-17_
Terry Tenbrink, Chief     Date
Shelby Police Department

# Exhibit 2



# OCEANA COUNTY SHERIFF'S OFFICE

**CRAIG MAST, SHERIFF**
216 LINCOLN ST., P.O. BOX 32   •   HART, MI 49420   •   **RYAN SCHILLER, UNDERSHERIFF**
PHONE: (231) 873-2121
FAX: (231) 873-0154

November 9, 2017

Mr. John Heykoop
Eagle Towing
10255 Old Highway 31
Montague, MI  49437

Re:   Car/Deer Accident Tow
      October 27, 2017

Dear John:

Please be advised that it has been brought to my attention that some of Eagle Towing's business practices are not consistent with what I want to see with regard to the citizens of and individuals traveling through Oceana County.  You will see attached hereto the most currently complaint brought to my attention regarding these practices, which I don't view as reasonable and do not approve of.

For this reason and similar prior incidents, I am removing Eagle Towing from the Oceana County Sheriff's Office wrecker rotation through Mason-Oceana Central Dispatch effective immediately.

Sincerely,

Craig Mast
Sheriff

CM:vh

# Exhibit 3

# MASON-OCEANA 911
# WRECKER POLICY

It is the aim of this policy to provide citizens of (and visitors to) Mason and Oceana Counties with reputable, efficient and equitable wrecker services. To that end this policy establishes operational guidelines to provide that type of service.

## 1. GENERAL

    A. The Mason-Oceana 911 Board of Directors (Hereafter referred to as the Board) shall establish a local policy for areas not covered by this policy, or where local policy development is required.

        (1) The Board shall work with their local prosecutor(s) to develop a policy for vehicles seized and held for evidence.

        (2) Policies shall be approved by the Board.

    B. The Board has the option of establishing a no-preference wrecker list or contracting with wrecker services in an area, depending on what best suits an area's operational needs.

    C. State and county facilities, such as county road commission garages, shall be used for storing seized and/or recovered items to the extent possible. Many of these government facilities are available for secure storage areas at no cost.

## 2. Types of Towing Services

    A. Basic Services: General towing services utilizing small- and medium-duty wreckers that include the following:

        (1) Providing towing and roadside assistance services to automobiles and light-duty trucks.

        (2) Removal of:

            a. Abandoned vehicles

            b. Vehicles involved in a traffic crash

            c. Emergency vehicle removal (upon the direction of a law enforcement member)

            d. Impound and secure storage of removed vehicles.

        (3) Hook-up for tow on or immediately adjacent to normally maintained right-of-way or maintained private road, drive or parking lot

        (4) Straight pull or winching

        (5) Clean-up at a collision scene requiring one employee to perform manual labor, including up to 30 minutes of on-scene standby

a. Per MCL 324.8902, it is the wrecker service's legal responsibility to clean up the debris at the scene of a traffic crash.

b. Clean up shall be done as quickly as possible, and shall involve the removal of all crash-related debris including debris from scene policing (i.e., spent flares).

c. Clean up shall not include the removal of hazardous or bio-hazardous materials except for fluids normally used to operate a vehicle.

d. If the required clean-up necessitates the use of motorized equipment to pick up debris, the wrecker service shall be entitled to charge a reasonable fee.

B. Special Services

(1) Services using medium or heavy-duty wreckers that include, but are not limited to, the following:

a. Excess winching.

b. Use of tow dollies.

c. Recovering, or towing/stabilizing, a vehicle that is located beyond a normal roadside ditch.

d. Unusually large clean-ups

e. Class B or C vehicle towing.

f. Uprighting cargo tanks

g. Providing assistance at hazmat incident scenes with specially trained wrecker operators.

h. Any removal or assistance duties the contract wrecker service cannot provide with its small and medium duty wreckers.

(2) Subcontracting for Special Services

a. Wrecker services shall be responsible for subcontracting with other wrecker services to provide any special services within the contract area that they cannot.

b. The wrecker service shall ensure that companies they sub-contract with meet the specifications listed in their contract and agree to abide by the requirements listed in Section 5 of this policy.

c. The wrecker service shall provide the Board with the names of the company with which they have subcontracted.

d. It is the responsibility of the wrecker service to inform the caller at the time of the request for service which subcontractor company will be responding to the scene.

  e. The wrecker service shall respond to the scene with their subcontractor and ensure that the vehicles are towed to the wrecker service's storage lot.

(3) Special agreements, policies, and contracts may be developed by the Board to accommodate unique circumstances (i.e., special equipment needs, lack of sufficient wrecker services in remote areas, central and regional dispatching), and shall be approved by the Board.

## 3. REQUESTS FOR WRECKER SERVICE

A. Members of law enforcement agencies or fire departments shall not recommend one wrecker service over another to the public.

B. Officers calling for a no-preference wrecker shall not request a wrecker service, which is not contracted, or on the no-preference wrecker call list, nor direct that a particular wrecker service be called out of order. The only exception is if the particular service required is only available through the towing service requested.

C. Motorist-Preferred Wrecker Service

(1) Regardless of whether a no-preference wrecker list or contract wrecker service is used, motorists in need of wrecker service shall be asked if they have a preferred service. Their request shall be honored so long as the wrecker service is readily available and public safety is not an immediate concern.

(2) Motorists shall also be asked if their insurance company or vehicle's manufacturer offers roadside assistance. If so, they shall be given an opportunity to call their service provider for a wrecker as long as public safety is not an immediate concern.

## 4. WRECKER SERVICE GEOGRAPHICAL AREAS

A. The Board may establish wrecker service geographical areas within the area of a number, size, shape, and location deemed necessary.

B. Wrecker services meeting the requirements outlined in Section 5 of this policy shall be used by the Board within the wrecker service's requested geographical area.

## 5. CONTRACT OR NO-PREFERENCE LIST REQUIREMENTS

Wrecker services interested in working with the Board shall agree to abide by the following requirements for the duration of their association with the Board. Failure to comply with all of these requirements may be cause for termination of the contract or removal from the no-preference wrecker call list as provided in this policy.

A. The wrecker service shall neither conceal nor misrepresent any material facts when applying for or performing services under this agreement.

B. The wrecker service shall be legally established as a towing business (i.e., registered with the respective County Clerk as an assumed name business,

or registered with the State of Michigan as a corporation) with operations within the area.

    (1) Post office box numbers shall not be accepted.

    (2) All necessary equipment and storage facilities shall be located in the area to be served.  Exceptions may be made for specialized equipment needs, as dictated by unique or emergency conditions.

C. The wrecker service shall comply with this policy, all rules and regulations prescribed by the MPSC (as applicable), local ordinances, zoning requirements, and state laws pertaining to this type of business.

D. Drivers and representatives of the wrecker service shall be professional and courteous in their dealings with the public.

E. The wrecker service shall maintain an effective means of communication with their trucks and drivers at all times.

F. Insurance

    (1) The wrecker service shall maintain adequate insurance coverage on its fleet and drivers.

    (2) The Board shall require that wrecker services provide a copy of their valid insurance policy, as well as copies of each renewal as long as their contract is in effect or they are listed on the no-preference wrecker list.

    (3) If the wrecker service cannot provide proof of insurance coverage, they shall immediately have their contract canceled or be removed from all no-preference wrecker call lists until the Board is satisfied that the wrecker service is in compliance with insurance requirements.

G. Indemnification

The Board or it's designees shall not be held responsible for liabilities incurred while the wrecker service is providing service at a scene to which they were dispatched.  The wrecker service agrees that it is not acting as, nor will it represent itself as, an agent of the Board or it's designees while performing services.

H. Storage Facilities

    (1) The wrecker service shall own or have an exclusive, signed lease to a secure vehicle storage area of suitable size, properly zoned and adequately fenced, within the assigned area.  If the storage area is leased, the lease shall be valid through the term of the contract or no-preference list.

        a. Documentation of zoning compliance and ownership or exclusive lease of the storage facility are required and shall be submitted with the wrecker service's application.

    b. If the storage area location is different from the wrecker service's business location, it shall identify the physical location of the storage facility on the application.

(2) The storage area shall only be accessible by the wrecker service.

(3) The storage area shall be capable of simultaneously holding a minimum of ten (10) passenger vehicles and at least two (2) maximum-size tractor-trailer combinations if they are able to perform heavy-duty tows.

(4) If the wrecker service is unable to store a vehicle because there is insufficient storage area, they shall immediately notify the Board. The wrecker service shall be financially responsible for any additional towing or storage charges associated with this situation.

(5) Seized and Evidence Vehicles

    a. The wrecker service shall provide a separate area within their storage area for vehicles that have been identified as stolen or involved in criminal investigations, forfeitures, or other law enforcement related matters.

    b. After having stored the vehicle for twenty (20) days, the wrecker service agrees to contact the agency initiating the tow to initiate the abandoned and unclaimed vehicle procedures specified in Section 5K of this policy. Under no circumstances shall the Board or it's designees be charged for the storage of seized vehicles and vehicles held as evidence.

(6) The wrecker service shall be solely responsible for any damage or theft of vehicles and/or personal property while such vehicle and/or personal property stored on the wrecker service premises.

(7) When requested by a law enforcement agency, the wrecker service shall provide written notification identifying where a towed vehicle is physically being held.

I. Equipment

(1) The wrecker service agrees to properly maintain its trucks and clearly mark them as required by state law. The trucks shall not bear markings, which would suggest or indicate that they are law enforcement vehicles.

(2) The wrecker service shall ensure that its drivers and equipment used for department requests are qualified under the provisions of the Motor Carrier Safety Act, 1963 PA 181, and the Michigan Vehicle Code, 1949 PA 300, as amended.

    a. The wrecker service shall maintain a minimum of two Class A-B-C trucks and two drivers on call to respond to requests for services under this contract 24 hours per day, 365 days per year.

    b. The wrecker service shall provide the Board with the following information for each of their trucks:

    i. Vehicle class

    ii. Make Year, Model, and GVWR (rating of chassis)

    iii. Number, capacity and type (i.e., fixed or moveable, manual or hydraulic) of booms

    iv. Number and size of winches

    v. Size and quantity of cable for each winch

    vi. Lift type(s) (i.e., sling, wheel lift, chassis lift, roll back)

    vii. Rear wheel/axle configuration (i.e., duels, tandem duels)

    viii. Any additional equipment

    ix. Copy of each vehicle's registration

    x. If leased, a copy of each vehicle's lease agreement

    xi. A copy of the last annual (periodic) certification inspection completed (shall be within the three months prior to the date of their application).

c. The wrecker service shall maintain all equipment in safe, legal operating condition at all times and shall equip all vehicles with rotating amber lights visible from 360 degrees.

d. If the wrecker service fails to maintain its equipment in good repair the Board may immediately cancel the contract or remove the service from the no-preference wrecker call list at any time during this contract.

J. Response to Calls for Service

(1) Requests for service received from law enforcement members shall receive first response priority.

(2) The wrecker service shall be available by telephone 24 hours a day, 365 days per year, with at least one wrecker immediately available, unless another schedule is deemed appropriate by the Board.

(3) Answering Telephone Calls

a. The wrecker service shall answer telephone calls for service within 10 rings.

b. If the wrecker service fails to answer its telephone after 10 rings, or if it indicates that it cannot immediately handle a call, the Board or its designee shall notify the wrecker service in writing of noncompliance with their agreement.

c. Upon the occurrence of three such written notices within a 12-month period, the Board shall have the right to immediately cancel the contract or remove the service from the no-preference list.

(4) Response time to calls from Mason-Oceana 911 shall be reasonable, as determined by the Board.

(5) The wrecker service shall abide by all laws when responding to a scene and/or towing vehicles for the department, including equipment and traffic laws.

(6) The wrecker service shall not send a truck to a law enforcement incident outside the agreed upon geographical area unless requested by an enforcement member.

K. Abandoned and Unclaimed Vehicles

(1) The wrecker service shall comply with all applicable provisions of MCL 257.252a-g as they apply to abandoned vehicles.

(2) The wrecker service shall not remove an abandoned vehicle from private property in accordance with MCL 257.252a without first notifying Mason-Oceana 911.

(3) The wrecker service agrees to serve as the custodian of the vehicle to ensure disposal of unclaimed vehicles as outlined in MCL 257.252g.

L. Charges

(1) The wrecker service shall be paid by the registered owner of the serviced vehicle.

(2) Basic and Special Service Charges Reasonable rates based on local industry standards shall be used for all services provided.  The wrecker service shall provide a written copy of its rates detailing charges for all basic and special services to the Board no later than April 1, 2017, and thereafter, January 31st of each year.

(3) Storage Charges

a. The wrecker service may charge reasonable fees in addition to the basic and/or special charges for services performed in addition to the basic service.  These charges may vary based on the size of the vehicle stored.

b. Vehicles Excluded from Storage Charges

In the event a vehicle is towed and/or stored but a court later determines that it was improperly moved, the requesting agency shall not be charged a fee by the wrecker service unless payment is required by court order under MCL 254.252f.

(4) Mileage Charges

a. A local industry standard amount may be charged per mile for mileage driven in excess of five miles from the point of hook-up to the storage facility or other designated destination.  All mileage charges shall be calculated based on one-way mileage.

b. The wrecker service shall provide a written copy of its mileage rates to the Board no later than January 31st of each year.

(5) Charges for Canceled Calls

If a call requesting wrecker service is canceled prior to the service being provided (i.e., hooking up the vehicle), neither the requesting agency nor the vehicle's owner/operator shall be obligated to compensate the towing company. Mason-Oceana 911 will place the wrecker service back into their spot in the rotation before the cancellation.

M. Towing Documentation

(1) Before towing any impounded vehicle from a scene as requested by an agency, the wrecker service shall:

a. Obtain the vehicle's identification number from the vehicle, or from the officer at the scene.

b. Witness that inventory was taken by the law enforcement officer if applicable.(2) The wrecker service shall not remove a wrecked vehicle from the scene of an accident without authorization by a law enforcement agency.

N. Vehicle Redemption

(1) The wrecker service shall allow for the redemption of vehicles from their storage area at least eight (8) hours per day, five (5) days per week, and shall make their facility reasonably available after normal business hours upon receiving a telephone call from the vehicle owner.

(2) The wrecker service shall not permit a vehicle owner to redeem an impounded vehicle or remove any of its contents without permission from the requesting agency or their designee. Failure to comply with this section is grounds for termination of the contract or removal from the Board's no-preference wrecker list.

O. The wrecker service agrees that intentional violations of Chapter II of the Michigan Vehicle Code for financial gain will result in their immediate termination of the contract or removal from the Board's no-preference wrecker list and criminal prosecution where applicable.

6. NO-PREFERENCE WRECKER CALL LIST

A. The Board may establish a no-preference wrecker call list for each assigned geographical area where there is more than one qualified wrecker service.

(1) If a no-preference wrecker call list is created, only wrecker services, which have requested placement on the list and have met the requirements of this policy shall be included.

(2) If a wrecker service has been contacted and cannot respond, it shall be placed at the end of the no-preference wrecker call list, and the next wrecker service on the list in the corresponding geographical area shall be contacted.

B. Application for Placement on No-Preference Wrecker Call List

(1) The Board shall provide a copy of the Mason-Oceana 911 Wrecker Services Agreement and Requirements for Placement on No-Preference Call List and the Mason-Oceana 911 Wrecker Policy to the representative of a wrecker service requesting to be placed on the Board's no-preference wrecker call list. This document defines the Board's standards and service expectations.

(2) The wrecker service representative shall sign and date the form indicating he or she has read and understands the requirements, that the wrecker service is willing to adhere to the requirements, and shall provide all required information specified in the Mason-Oceana 911 Wrecker Services Agreement and Requirements for Placement on No-Preference Call List. It is the wrecker service's responsibility to ensure that the Board is provided with updated information required by the Mason-Oceana 911 Wrecker Services Agreement and Requirements for Placement on No-Preference Call List by January 31st of each year.

(3) The original signed Mason-Oceana 911 Wrecker Services Agreement and Requirements for Placement on No-Preference Call List and all other required documents shall be maintained by the Mason-Oceana 911 Director or designee for the year the wrecker service is removed from the no-preference wrecker call list plus two years.

C. Working Outside of the No-Preference Wrecker List

Law enforcement members may work outside the no-preference wrecker list and contact the nearest available wrecker service if any of the following situations occur:

(1) The wrecker service notifies requester that it cannot immediately handle a call for service

(2) The wrecker service does not respond to the call within 20 minutes after being notified by the requester

(3) On occasions when an injured person is pinned in a wreck or when there is a danger of fire or explosion and expedient wrecker service is required.

(4) Traffic conditions are such that immediate removal of a vehicle is necessary to resume the flow of traffic.

(5) Once on the scene, the wrecker service is unable to handle the tow and cannot respond with the necessary equipment in a timely manner

(6) If the next wrecker service on the list is based a considerable distance from the scene to make it impractical to wait for its arrival.

7. CONTRACTING FOR WRECKER SERVICES

A. In areas where circumstances make the use of the no-preference list impossible or impractical (i.e., there are a limited number of potentially qualified wrecker services, or an agency is unwilling to use the compiled list), the Board may contract with one or more wrecker service.

B. In contracting with a wrecker service, the Board reserves the right to reject any and all bids, to waive or not waive informalities or irregularities in bids or bidding procedures, and to accept or further negotiate cost, terms, or conditions of any bid determined by the Board or its designee to be in the best interest of the Board even though not the lowest bid.

C. If a contract is awarded, the selected wrecker service shall be required to adhere to the requirements listed in Section 5 of this policy, which shall become a part of a formal agreement between them and the Board.

    (1) The contract shall represent the entire agreement between the parties and supersedes all prior representations, negotiations, or agreements, whether oral or written. Any modifications of this contract shall be mutually agreed upon written amendments signed by all parties.

    (2) In the event that it becomes necessary to revise any part of the agreement, addenda shall be provided. Deadlines for submission of agreement may be adjusted to allow for revisions.

    (3) This contract shall commence upon its execution by all parties and shall stand valid and binding for a period of four years.

D. Proposals shall be signed by an official authorized to bind the wrecker service to the contract provisions for a period of at least 90 days. Failure of the successful bidder to accept the obligation of the contract may result in the cancellation of any award

E. Working Outside the Contract

Law enforcement members may work outside the contract and contact the nearest available wrecker service if any of the following situations occur:

    (1) The wrecker service notifies requester that it cannot immediately handle a call for service

    (2) The wrecker service does not respond to the call within 20 minutes after being notified by requester

    (3) On occasions when an injured person is pinned in a wreck or when there is a danger of fire or explosion and expedient wrecker service is required.

    (4) Traffic conditions are such that immediate removal of a vehicle is necessary to resume the flow of traffic.

    (5) Once on the scene, the wrecker service is unable to handle the tow and cannot respond with the necessary equipment in a timely manner

F. Termination of Contract

    (1) The contract may be terminated by any party to it without cause upon 30 days notice to the other party. If the contract/agreement is terminated or cancels this contract for failure of the wrecker service to comply with the terms of this contract, it shall do so in writing, specifying the violated sections.

(2) Either party may complete revocation of the contract at any time. Just cause and prior notification will be afforded all parties concerned before revocation..

## 8. COMPLAINT PROCEDURES

### A. Complaint Against a Wrecker Service

(1) Problems with or complaints about a wrecker service shall be documented by a law enforcement representative for presentation to the Board. If the complaint did not originally involve law enforcement, law enforcement shall be notified for first contact with the complainant. The documentation shall be retained for the duration of the wrecker service's contract with the Board, or their time on the wrecker list, plus two years.

(2) Requesting agencies shall report to the Board the name of any wrecker service or their employee that renders poor service, or that is incapable of providing quality service because of inadequate equipment or personnel.

(3) Requesting agencies who become aware that a wrecker service has intentionally violated Chapter II of the Michigan Vehicle Code shall inform the Board of the reported violations.

    a. A requesting agency who learns of intentional violations of Chapter II of the Michigan Vehicle Code shall ensure a thorough investigation into the incident and seek criminal prosecution if warranted.

    b. A wrecker service who is found to have intentionally violated Chapter II for financial gain shall immediately have their contract canceled or be removed from the no-preference wrecker call list.

(4) Each wrecker service shall be held to identical standards of conduct or performance

(5) When a complaint is received concerning the performance or rate change of a wrecker service or the service is not adhering to the requirements established by this policy, the complaint shall be immediately investigated.

    a. Unless extenuating circumstances exist, a wrecker service shall not have their contract cancelled or be removed from the no-preference wrecker call list without an investigation by the Board or their designee.

    b. If it is found that the wrecker service failed to comply with the requirements of this policy, a written notice shall be sent describing the complaint and the action needed to maintain a position on the no-preference wrecker call list.

    c. Wrecker services shall be notified in writing of any non-compliance with accepted standards of conduct in a timely manner, and advised that they have the right to an appeal in writing to the Board before administrative or disciplinary action can be taken. The written notice shall indicate that additional complaints could result in removal from the list.

(6) If an additional complaint is received concerning a wrecker service within a year, another investigation shall be conducted by the Board or their designee.

    a. A copy of the report shall be sent to the Hazardous Materials and Investigation Unit Commander, Motor Carrier Division Headquarters, for further review and investigation.

    b. The Motor Carrier Division shall notify the Board of the results of any investigation.

B. Complaints From a Wrecker Service

Complaints or concerns from a wrecker service shall be investigated by the Board or their designee.  If their complaint cannot be handled at the local level, the information shall be forwarded to the Hazardous Materials and Investigation Unit Commander, Motor Carrier Division Headquarters.  The Motor Carrier Division shall make contact with the MPSC when necessary.

9. REVISION RESPONSIBILITY

Responsibility for continued review and revision of this Policy lies with the Board.

# Exhibit 4

11/20/2017                          Oceana County Sheriff's Office Mail - Eagle Towing

                                    Craig Mast <mastc@oceanasheriff.net>

# Eagle Towing
1 message

**Craig Mast** <mastc@oceanasheriff.net>                    Thu, Nov 9, 2017 at 3:41 PM
To: "deputies@oceanasheriff.net" <deputies@oceanasheriff.net>, Ray Hasil <rhasil@mason-oceana911.org>, Jeff White
<whitej25@michigan.gov>, Joseph Bizon <oceanaprosecutor@gmail.com>

Please see the attached documents. Eagle Towing is no longer on the Oceana County Sheriff's non-preference rotation
list. Ray Hasil from Central Dispatch is also aware of this.  If a driver requests Eagle Towing, please make that
arrangement for them but other than that, they are not on our non-preference list until further notice.

--

*Sheriff Craig Mast*
Oceana Co. Sheriff's Office
216 Lincoln St.
Hart, MI 49420
(231)873-6763

⎙ **Scan0015.pdf**
1358K

# Exhibit 5



# OCEANA COUNTY SHERIFF'S OFFICE

CRAIG MAST, SHERIFF
216 LINCOLN ST., P.O. BOX 32    •    HART, MI 49420    •    RYAN SCHILLER, UNDERSHERIFF
PHONE: (231) 873-2121
FAX: (231) 873-0154

November 27, 2017

# **MEDIA RELEASE**

Sheriff Mast would like to be forthright and transparent about the recent accusations that are being made via social media about our salvage vehicle inspection procedures. First and foremost, we want the citizens of Oceana County to know that there is absolutely no merit or truth to the accusations being made.

On November 22, 2017 a second Facebook post on the page, "Muskegon News and Events", now named, "West Michigan News and Events" came out accusing Lt. Hasty and Sheriff Mast of wrongdoing.

The accusations began after removing a local towing company from our non-preference wrecker rotation following a citizen complaint regarding a bill they had received from this towing company. The complainant was billed $1,461.18 to respond to a car deer crash on US-31, near Stony Lake Rd. The complainant's vehicle was subsequently towed to this towing company's storage facility against the owner's request.

Since the removal of the local towing company from the non-preference wrecker rotation, they have submitted two FOIA requests to the Sheriff's Office. They are requesting salvage vehicle records, personnel files, financial records, cellular phone records, etc. The local towing company is also demanding that this be investigated by the Michigan State Police, or the State Attorney General's Office. We welcome any investigating agency to come and audit our records or procedures with regard to salvage vehicle inspections.

We ourselves have contacted the Michigan State Police, Michigan Secretary of State - Department of Regulatory Affairs, and the Oceana County Prosecutor's Office about these accusations and demands. We contacted these agencies to determine if the method of handling salvage vehicle inspections as set forth and continued by the prior 16+ years of administration here are within the guidelines of the State of Michigan. At this time neither Lieutenant Hasty, nor Sheriff Mast are being investigated by any agency

Sheriff: Facebook page is lying about accusations. | OceanaCountyPress.c    Page 1 of 3

Log In   Register

Search & Hit Enter


SMITH & EDDY INSURANCE

Ludington: 119 S. Rath Ave., 231-845-1481
Manistee: 1554 US 31 South, 231-723-3500
Scottville: 201 S. Main St., 231-757-4732


oceana county press
31
Local news by local folks

Facebook   Twitter   Mason Co Press   Manistee Co Press   News   Menu Guide   Opinion   Courts   Contact   About

BIRTHS   COMMUNITY   DEATHS   FEATURES   USE TERMS

# Sheriff: Facebook page is lying about accusations.
November 27, 2017


Lighthouse Realty
231-845-7500
golighthouserealty.com

Leading Service,
Professional, Committed



Timothy Gibson
231-233-7317

SMITH & EDDY
INSURANCE


$3.50 Breakfasts
Warmly Served 7-11am Mon-Fri
HOUSE-FLAVORS
Downtown Ludington 231-845-5785   Downtown Ludington 231-457-4500
www.House-Flavors.com


Sheriff Mast

Sheriff: Facebook page is lying about accusations.

@OceanaCountyNews

By Allison Scarbrough, Editor.

HART — A Facebook page called "West Michigan News and Events" is making false accusations against Oceana County Sheriff Craig Mast and Lt. Shane Hasty, and Mast has cleared the air.

The sheriff issued a press release Monday, Nov. 27, which states the following:

"Sheriff Mast would like to be forthright and transparent about the recent accusations that are being made via social media about our salvage vehicle inspection procedures. First and foremost, we want the citizens of Oceana County to know that there is absolutely no merit or truth to the accusations being made.

"On November 22, 2017, a second Facebook post on the page, 'Muskegon News and Events,' now named, 'West Michigan News and Events,' came out accusing Lt. Hasty and Sheriff Mast of wrongdoing.

"The accusations began after removing a local towing company from our non-preference wrecker rotation following a citizen complaint regarding a bill they had received from this towing company. The complainant was billed $1,461.18 to respond to a car/deer crash on US 31 near Stony Lake Road. The complainant's vehicle was subsequently towed to this towing company's storage facility against the owner's request.

"The local towing company is also demanding that this be investigated by the Michigan State Police, or the State Attorney General's Office. We welcome any investigating agency to come and audit our records or procedures with regard to salvage vehicle inspections.

"We ourselves have contacted the Michigan State Police, Michigan Secretary of State – Department of Regulatory Affairs, and the Oceana County Prosecutor's Office after these accusations and demands. We contacted these agencies to determine if the method of handling salvage vehicle inspections as set forth and continued by the prior 16+ years of administration here are within the guidelines of the State of Michigan. At this time neither Lieutenant Hasty, nor Sheriff Mast are being investigated by any agency."


Lt. Hasty


ORANGE OPPORTUNITY SALES EVENT
Kubota RTV X-Series
FC
Freeman Creek Equipment
711 N.U.S. 31 • Free Soil
231-464-5155
www.fcdiesel.com

OCP FACEBOOK FEED



Oceana County Press
1 hour ago

Recent deaths, posted Nov. 27, 2017.


Performing Arts Series
Holiday Concert Season
WSCC CONCERT CHOIR
December 17
2:00 pm
West Shore Community College

Case 1:19-cv-00938-RJJ-SJB    ECF No. 1-1 filed 11/06/19    PageID.43    Page 40 of 41

Sheriff: Facebook page is lyin    bout accusations. | OceanaCountyPress.    Page 2 of 5





ManMade Gems

*Have Cards for your Cash*

*Jewelry Repair Experts*

231-861-2165

shelbygemfactory.com

I AM WSCC



ZLP

*Your Propane Professionals*

231.757.3775

958 N. U.S. 31 Scottville

The 'West Michigan News and Events' Facebook page post on Wednesday stated: "Update: We can now confirm that an investigation is underway into Lt. Shane Hasty of Oceana County Sheriff's Office for embezzlement of funds. The investigation is into his alleged involvement as a salvage vehicle inspector and not turning over the funds collected from those inspections into the county. As many of our readers may remember, the Former Shelby Police Chief Robert Wilson was sentenced to jail and restitution of $70,000 remains uncollected. We have received other information that Sheriff Craig Mast is also under investigation for allegedly attempting to intimidate a witness and for malfeasance in office."

The post, which had a photo of Lt. Hasty, was shared 109 times. As of late Monday afternoon, the post remained on the page, and it is the only post on that Facebook page.

Mast told OCP he preferred not to specifically name the towing company involved. "I would like to stay on the high ground," he said. "I'm trying to do what's best for our county."

Mast said there were several several towing bills from this particular company that were "excessively high."

"I want to prevent our residents and travelers from being exposed to this practice," he said. "We just just wanted to cut our alliances. My intent is protect our community."

The sheriff said that dealing with the false allegations has cut into the sheriff's office time and resources. "There is a lot more responsible use of our time," he said.

At this point it is not immediately known whether criminal charges will be filed against the towing company or if a civil lawsuit may launched for the false posting. OCP will provide further updates when they are available.

*This story is copyrighted © 2017, all rights reserved by Media Group 31, LLC, PO Box 21, Scottville, MI 49454. No portion of this story or images may be reproduced in any way, including print or broadcast, without expressed written consent.A*

**Share this:**

🐦  ⬜  G+

Related

| | | |
|---|---|---|
| Dozens search for missing Mears man. | New year, new sheriff team. | Sheriff-Elect completes leadership training. |
| February 15, 2017 | December 29, 2016 | December 17, 2016 |
| In "News" | In "News" | In "News" |

Tags: Oceana County Sheriff's Office



SUBSCRIBE TO MCP VIA EMAIL

Enter your email address to subscribe to this blog and receive notifications of new posts by email.

Join 12,992 other subscribers

Email Address

Subscribe

CLASSIFIEDS

LEGALLY SPEAKING: SENTENCING GUIDELINES





Sheriff: Facebook page is lying ~~ut accusations.~~ | OceanaCountyPress.~~~~



Ludington: 119 S. Rath Ave., 231-845-1481
Manistee: 1554 US 31 South, 231-723-3500
Scottville: 201 S. Main St., 231-757-4732

Copyright © 2017 OceanaCountyPress.com, All Rights Reserved.